UNITED STATES of America, Appellee,

v.

Cornel EVERETT and Timothy Scott, Defendant-Appellants.

Nos. 869, 978, Dockets 86–1444, 86–1454.

United States Court of Appeals, Second Circuit.

Argued April 6, 1987.

Decided July 31, 1987.

---

Phylis Skloot Bamberger, New York City (The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for defendant-appellant Everett.

Roger Bennet Adler, New York City, for defendant-appellant Scott.

Kenneth Roth, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Kerri L. Martin, Asst. U.S. Atty., New York City, of counsel), for appellee U.S.

Before OAKES, KEARSE and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal raises a common, yet vexing issue of the use of "other crimes" evidence during a trial. Because "other crimes" evidence attains a special place in the jury's mind, the government is forbidden from introducing it solely to prove that a defendant has a propensity to commit crimes. The prejudice of this proof, once admitted, sticks to a defendant like mud throughout the trial. Such a harsh result is justified only when the "other crimes" evidence is probative of something other than the defendant's propensity. In this case, Cornel Everett and Timothy Scott were convicted on October 23, 1986, after a jury trial, of conspiracy to commit armed robbery and armed robbery in violation of 18 U.S.C. §§ 371, 2113(d) in the United States District Court for the Southern District of New York (Walker, J.). Although several contentions are raised on appeal, the principal question is whether other crimes evidence, offered to corroborate a co-conspirator's testimony—but including facts beyond that co-conspirator's testimony—violates Fed.R.Evid. 404(b). We therefore recount the facts regarding this issue in some detail.

I

In 1985 Carl Parks, an unindicted co-conspirator, was arrested on bank robbery charges unrelated to the April 1982 crime at issue here. After admitting his involvement in the April 1982 robbery, Parks signed a cooperation agreement with the government and agreed to testify against his co-conspirators. Prior to the instant trial, he pled guilty and was sentenced to four years imprisonment.

At trial, Parks testified that Everett, whom he had known for a year, approached him in early April 1982 and inquired whether he wanted to rob a bank. According to Parks, Everett told him that he and two others had robbed the Chemical Bank in March and that in order to collect the money, Everett had jumped over a counter while wearing a hooded sweatshirt. The other two participants wore wigs and glasses. Everett told Parks that he wanted to rob the same bank again because he thought the March haul was too small. The government offered Parks' testimony under Fed.R.Evid. 404(b) to demonstrate Everett's motive and plan for the April robbery.

Because no one at the Chemical Bank had been able to identify the participants in the earlier March robbery, the government

attempted to corroborate Parks' testimony by producing Stephanie Greene, who was the branch manager of Chemical Bank and a witness to both the March and April robberies. She stated that the earlier crime had occurred at 1:30 p.m., just before the bank's 2:00 p.m. closing, and that there were only a few customers present. She observed a tall man holding a shotgun on the bank's employees and customers, and saw another man dressed in a peacoat and hood go behind the service counter, saying "Where is the money? Where is the money?" When he came to the door of the tellers' area and found it locked, she said, he vaulted over the tellers' counter to look for it. When asked to compare the behavior of the March vaulter with that of the April vaulter, she testified that the first vaulter had to search for the money, but the second vaulter "knew" where it was and jumped over the locked counter immediately. The government also introduced surveillance photos of the March robbery which showed two robbers wearing wigs and glasses and a third man in dark clothing behind the counter. The government offered Ms. Greene's testimony and the surveillance photos as evidence corroborating Parks' testimony under Fed.R.Evid. 404(b).

## II

### A. *Everett's Claim*

Everett challenges the admissibility of Ms. Greene's testimony and of the surveillance photos pursuant to Federal Rules of Evidence 404(b) and 403. According to appellant, Ms. Greene brought out facts not alluded to by Parks. Hence, Everett argues that all of Greene's testimony should have been excluded under Rule 404(b) as improper, noncorroborative "other crimes" evidence and that the district court's error in admitting the evidence entitles him to a new trial.

### 1. *404(b)—Corroborative Evidence*

■ Under Rule 404(b) evidence of "other crimes" has been consistently held admissible to corroborate crucial prosecution testimony. *See, e.g., United States v. Mo-*

*hel,* 604 F.2d 748, 754 (2d Cir.1979); *United States v. O'Connor,* 580 F.2d 38, 43 (2d Cir.1978); *United States v. Williams,* 577 F.2d 188, 192 (2d Cir.), *cert. denied,* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). But the prosecution is not permitted to wholesale proof into evidence under the guise of "corroboration purposes". The notion that the more other crimes evidence the prosecution is permitted to introduce, the more it is entitled to get in is misguided. Hence, to avoid potential prosecutorial abuse, we have required the proponent of the evidence to demonstrate a close relationship between the proffered evidence and the evidence to be corroborated. Other crimes evidence, therefore, is only admissible for corroborative purposes, if the corroboration is "direct and the matter corroborated is significant." *Mohel,* 604 F.2d at 754; *Williams,* 597 F.2d at 192.

Although the cases have repeatedly recited that the corroborating evidence must be both direct and significant, *see, e.g., Mohel,* 604 F.2d at 754–55, they have done so without defining those terms. Consequently, it is necessary to examine their meanings and then apply them to the facts of this case.

"Significant" evidence is usually understood to mean important—as distinct from trivial—evidence in a trial. As such, that concept is well enough understood so as to need no citation. Here, Parks was the prosecution's only real witness. But, because of his past convictions and involvement in the instant crime, his credibility had come under heavy attack. The prosecution accordingly felt obliged to introduce proof corroborating his testimony. Thus, this "other crimes" corroborating evidence met the test of being "significant" because it provided "important" details describing the formation and implementation of the appellant's plan to rob the Chemical Bank and reinforced the testimony of the key government witness against Everett. *See Williams,* 577 F.2d at 193.

"Direct" corroborating evidence is evidence that is not wholly disconnected, remote, or collateral to the matter corroborated. In other words, if the chain of infer-

ences necessary to connect the corroborative evidence to the ultimate fact to be proven is too lengthy, the evidence is not *directly* corroborative; the reason is that the connection between the corroborative proof and the ultimate fact that the prosecution must prove beyond a reasonable doubt becomes too attenuated and thereby weakened in probative value. In such a case, its admission as "other crimes" evidence is much more likely to adhere unfairly to defendant without the justifying presence of probativeness on an issue other than propensity. *See United States v. Lyles,* 593 F.2d 182, 195 (2d Cir.), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979); *United States v. Ravich,* 421 F.2d 1196, 1204 n. 10 (2d Cir.), *cert. denied,* 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970); *Prudential Ins. Co. of America v. Glasgow,* 208 F.2d 908 (2d Cir. 1953); C. McCormick, *Law of Evidence* § 190, at 452–53, (2d ed. 1972); J. Wigmore, *Evidence,* § 41 (3d ed. 1940).

Here, the testimony of Ms. Greene and the surveillance photos were, on the whole, directly corroborative of Parks' account of Everett's conversation with him. Her testimony corroborated the facts that the same bank had been robbed earlier and only half as much taken, that during commission of the robbery a person wearing a hooded sweatshirt had jumped over the counter, and that the other two participants had worn wigs and glasses. Thus, her testimony on these aspects was clearly admissible under 404(b) as directly corroborative evidence.

Her testimony that the first vaulter had to search for the money while the second vaulter "knew" where it was and jumped over the locked counter immediately, while not specifically corroborative of anything Parks testified to, is generally corroborative that the same robbers were at work in the two robberies.

On the other hand, Ms. Greene's testimony regarding the shotgun held by another participant (not Everett) at the March robbery and some of the photographs had little, if any, relationship to anything Everett said to Parks. Accord-

ingly, they were not directly corroborative of Parks' testimony and hence not admissible under 404(b). Nevertheless, we find that because the effect of admitting these additional facts in this instance was *de minimis,* the district court's error in this regard did not prejudice appellant and, therefore, as harmless error, does not require a new trial.

### 2. *403—Prejudice v. Probative Value*

Other crimes evidence even though admissible under Rule 404(b) must, of course, still be tested under the probativeness prejudice standard of Rule 403. Here, the trial court balanced the probativeness of the other crimes evidence against its prejudicial effect and determined that the prejudice to appellant did not outweigh its probative value. In addition, the district court gave cautionary instructions regarding how the jury was to consider this proof. As a consequence, we cannot say that the admission of the other crimes evidence was an abuse of the trial court's wide discretion under Rule 403. *See United States v. Martino,* 759 F.2d 998, 1005 (2d Cir.1985).

### B. *Scott's Claims*

Scott raises several points that require brief discussion. In the first place he asserts, as does Everett, that he was prejudiced by the corroboration of Parks' testimony. This argument is not persuasive because the evidence against Scott was reasonably strong. For example, in a 1986 interview with an FBI agent, Scott confirmed Parks' account of the April 1982 robbery by stating: "Hey, what Carl Parks told you was right and that's it. What else do you want me to say?" Appellant Scott also claims that the trial court erred in (1) admitting expert testimony regarding the height of the persons shown on the bank's surveillance photos, (2) denying Scott's attorney an opportunity to question Parks regarding his statements made to his own attorney, and (3) refusing to charge that Parks was an interested witness. We consider each contention in turn.

### 1. *Expert Testimony*

■ At trial, an FBI agent expert testified in the field of photogrammetry—calculating the heights of objects from their photographic images. Using bank surveillance photographs, the agent calculated that the height of one individual in the photographs was approximately 5'10". That individual was identified by Parks as appellant Scott, who is 5'10½". Scott argues that the agent's testimony confused the jury, was within the jury's common understanding, and was repetitious and cumulative. These contentions are meritless.

Rule 702 of the Federal Rules of Evidence provides that if "scientific, technical or other specialized knowledge" will help a jury to decide a fact issue, a qualified expert may testify. Whether to receive or exclude expert testimony is, under long-standing law, a matter confided to the sound discretion of the trial court, which will not be reversed unless an appellate court can say that the ruling is "manifestly erroneous." *Spring Co. v. Edgar*, 99 U.S. (9 Otto) 645, 658, 25 L.Ed. 487 (1878). *See also Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962) (citing *Spring Co. v. Edgar*); *United States v. Cruz*, 797 F.2d 90, 96 (2d Cir.1986); *Fernandez v. Choos Shipping Co., Ltd.*, 542 F.2d 145, 153 (2d Cir.1976).

Scott's claim that the jury was confused is pure conjecture. He cites nothing in the agent's testimony that would confuse it. Even were the jurors well-equipped to make judgments on height based upon photographs (a doubtful proposition given the distortions produced by the lighting and positioning of the camera), testimony from experts may still be admissible if they have specialized knowledge to bring to bear on the same issue which might be helpful. 3 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 702[02], at 702–10 (1985). This is particularly true in the case of a public officer—here an FBI expert in photogrammetry—who is presumed to perform his duty without interest except to submit an accurate report. *See Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fen-ner & Smith, Inc.*, 805 F.2d 49, 54 (2d Cir.1986).

Further, were the logic underlying Scott's claim accepted, then once a witness had identified a participant in a robbery and bank surveillance photographs had been introduced, any other proof of identity would be ruled cumulative. Obviously, this is not the rule. *See, e.g., United States v. Fernandez*, 480 F.2d 726, 735 (2d Cir.1973) (several employees testified as to height of robber in addition to expert testimony about robber's height based on surveillance photographs). Thus, the agent's expert testimony was properly admitted.

### 2. *Questioning of Parks*

■ Scott's trial counsel sought to ask Parks during cross-examination about information Parks may have given or withheld during his discussions with his own lawyer. The trial court refused to let Parks answer on the grounds that it was irrelevant and because it believed appellant's trial counsel was attempting to have the witness waive his attorney-client privilege. We need not reach Scott's objection to the trial court's *sua sponte* raising of the witness' privilege. Scott's counsel indicated at trial that the relevance of the inquiry was to examine Parks' understanding of the plea bargain arrangement that had been concluded with the government. Since counsel had an ample opportunity to examine that agreement during his cross-examination, any possibility of error in truncating the examination would be harmless.

### 3. *Parks' Interest*

The record reveals that the district court gave in substance the requested charge regarding Parks' interest as a witness to the jury. In fact, the trial judge marshalled the misstatements and contradictions that Parks had made at various stages of the investigation. Thus, Scott's claim on this issue is similarly without merit. *See United States v. Taylor*, 562 F.2d 1345, 1364 (2d Cir.), *cert. denied*, 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977). We have carefully reviewed Scott's other

claims and find that none of them have merit sufficient to warrant further discussion.

### III

The judgments appealed from are affirmed.