**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Timothy PITTS, Defendant–Appellant.**

**No. 92–30155.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 1993.

Decided Oct. 5, 1993.

444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81 (1979).

Frederick D. Leatherman, Jr., Seattle, WA, for defendant-appellant.

Richard A. Friedman and David Shelledy, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee.

Before: BRUNETTI, LEAVY, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Appellant, Timothy Pitts, appeals his conviction for two counts of cocaine distribution in violation of 21 U.S.C. § 841(a)(1) (1988). Appellant argues on appeal that the district court erred when it denied his motion to suppress evidence obtained from his residence on September 27, 1991 pursuant to a search warrant. He also argues the court erred when it admitted evidence, pursuant to Federal Rule of Evidence 404(b), of his arrest on March 3, 1991 for possession of two sawed off shotguns. Finally, appellant argues the district court erred when it increased appellant's offense level by two points pursuant to United States Sentencing Guidelines § 2D1.1(b)(1) (Nov. 1991) for possession of a dangerous weapon.

The district court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. We have jurisdiction over this case pursuant to 28 U.S.C. § 1291, and we affirm.

## I

Appellant was charged with four counts of cocaine distribution alleged to have occurred "during the fall of 1990," January, 1991, May 29, 1991, and July 31, 1991. The jury acquitted on the first two counts.

The government's chief witness against defendant was Maria Alexa Mirabueno. Mirabueno testified that she performed a variety of tasks, including the purchase of guns, related to appellant's drug dealing. She testified that on March 3, 1991 she purchased two shotguns for appellant. Her testimony about the purchase of these shotguns was corroborated by records from a gun dealer and by the testimony of police officer Christine Pennington, who arrested appellant on March 3, 1991 for possession of the guns that Mirabueno had purchased for him. The guns had been sawed off, and the police confiscated them when appellant was arrested.

Police searched appellant's home on September 27, 1991 pursuant to a search warrant. They seized a shotgun, shotgun shells, two cellular telephones, approximately 14 grams of marijuana, and a bag containing a trace of white powder.

The district court admitted into evidence testimony regarding appellant's March 3, 1991 arrest for possession of the sawed off shotguns including business records regarding the original purchase of these weapons. The district court also admitted the evidence which was seized in the appellant's home pursuant to the search warrant on September 27, 1991.

Appellant was convicted of delivering cocaine at Mirabueno's house on May 29, 1991 and of supplying Mirabueno with cocaine which she delivered to an FBI agent on July 31, 1991. The district court sentenced appellant based on an offense level of 34. The court increased appellant's offense level by two points pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon based on the shotguns for which he was arrested on March 3, 1991 and the shotgun police found at his residence on September 27, 1991. *See* United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(b)(1) (Nov. 1991).

## II

Appellant argues the district court erred when it denied his motion to suppress the evidence obtained at his residence on September 27, 1991. Appellant claims the search warrant was defective because: 1) the affidavit for the search warrant failed to show a nexus between Mirabueno's residence

where the cocaine was distributed on May 29, 1991 and the defendant's residence where the search took place on September 27, 1991, 121 days after the distribution; and, 2) the information in the affidavit for the search warrant was stale.

■ A magistrate's determination of probable cause will not be reversed absent a finding of clear error. *United States v. Schmidt,* 947 F.2d 362, 371 (9th Cir.1991). Thus, the standard of review is "less probing than de novo review and shows deference to the issuing magistrate's determination." *United States v. Hernandez,* 937 F.2d 1490, 1494 (9th Cir.1991) (quoting *United States v. Angulo–Lopez,* 791 F.2d 1394, 1396 (9th Cir. 1986)).

■ In the Ninth Circuit, "[w]e require only a reasonable nexus between the activities supporting probable cause and the locations to be searched." *United States v. Ocampo,* 937 F.2d 485, 490 (9th Cir.1991). A "reasonable nexus" does not require direct evidence that the items listed as the objects of the search are on the premises to be searched. *Id.* The magistrate must "only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Peacock,* 761 F.2d 1313, 1315 (9th Cir.) (citations omitted), *cert. denied,* 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985).

■ Probable cause to believe that a suspect has committed a crime is not, however, by itself adequate to obtain a search warrant for the suspect's home. *United States v. Ramos,* 923 F.2d 1346, 1351 (9th Cir.1991). The affidavit must demonstrate "reasonable cause to believe that the things listed as the objects of the search are located in the place to be searched." *Id.*

A magistrate may "draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Angulo–Lopez,* 791 F.2d at 1399. In the Ninth Circuit, we have recognized that " '[i]n the case of drug dealers, evidence is likely to be found where the dealers live.'" *United States v. Terry,* 911 F.2d 272, 275 (9th Cir.1990) (quoting *Angulo–Lopez,* 791 F.2d at 1399).

■ In this case, the warrant's supporting affidavit was written by FBI Special Agent Roberta Burroughs. The affidavit describes an FBI investigation of cocaine distribution to a cooperating individual referred to as "the witness." It states that during 1987, the witness had been a courier for Frank Cassell, and obtained eighteen ounces of crack cocaine from Mr. Cassell on a weekly basis. Mr. Pitts was the alleged supplier of cocaine to Mr. Cassell at that time. Following Mr. Pitts' arrest in late 1987 or early 1988, the witness did not obtain cocaine from either Mr. Pitts or Mr. Cassell for some time.

The affidavit also describes the crack sale of May 29, 1991 involving Mr. Pitts, and it states that between September 23 and 25, 1991, law enforcement agents confirmed that Mr. Pitts was residing at the address which was subsequently searched. Read as a whole, the affidavit provides enough information to establish a "reasonable nexus" between the activities supporting probable cause, namely Pitts' drug dealing and the location to be searched, his residence. Thus, the district court correctly determined that the warrant issued by the magistrate was adequate in this respect.

■ Appellant also argues that the warrant was deficient due to staleness. We have held that "[t]he mere lapse of substantial amounts of time is not controlling in a question of staleness." *United States v. Dozier,* 844 F.2d 701, 707 (9th Cir.), *cert. denied,* 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988). We evaluate staleness "in light of the particular facts of the case and the nature of the criminal activity and property sought." *United States v. Greany,* 929 F.2d 523, 525 (9th Cir.1991). "With respect to drug trafficking, probable cause may continue for several weeks, *if not months,* of the last reported instance of suspect activity." *Angulo–Lopez,* 791 F.2d at 1399 (emphasis added).

In *Greany,* we found that two year-old information on a marijuana grow operation was not stale. We determined that "[w]hen the evidence sought is of an ongoing criminal business ... greater lapses of time are permitted if the evidence in the affidavit shows

the probable existence of the activity at an earlier time." *Greany,* 929 F.2d at 525.

The information in the affidavit supporting the warrant supports the inference that Pitts was more than a one-time drug seller. The affidavit alleges that he was a regular supplier for Mr. Cassell. Moreover, the affidavit recounted the sale of May 29, 1991 at Mirabueno's home. Thus, the information was not stale, and it supports the magistrate's conclusion that there was probable cause to believe there would be drug paraphernalia and other items such as guns present in Pitts' home. We therefore hold the evidence obtained pursuant to the warrant was properly admitted against appellant.

### III

■ Appellant claims that the trial court committed reversible error when it admitted evidence of appellant's arrest on March 3, 1991, nearly three months prior to May 29, for possession of two sawed-off shotguns. The admission of other crimes pursuant to Federal Rule of Evidence 404(b) is reviewed for an abuse of discretion. *United States v. Hill,* 953 F.2d 452, 455 (9th Cir.1991).

However, this court has also explained that the Rule is "one of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove *only* criminal disposition." *United States v. Rocha,* 553 F.2d 615, 616 (9th Cir. 1977) (emphasis in original).

■ The Ninth Circuit generally applies a four-part test to determine the admissibility of evidence under Rule 404(b). *United States v. Kindred,* 931 F.2d 609, 612–13 (9th Cir.1991). We consider: (1) whether there is sufficient evidence to conclude that the prior crime occurred; (2) whether the evidence is too remote in time; (3) whether the offenses are similar; and, (4) whether the prior act is offered to prove a material element of the offense. *Id.* However, in the instant case, it is difficult to apply this test because the government argued at trial and on appeal that it was offering the evidence of the prior crime to bolster the credibility of its key witness, Mirabueno. Indeed, the trial court

admitted the evidence for the purpose of corroboration.

The Second Circuit has permitted Rule 404(b) to be used to admit evidence which corroborates a witness. In *United States v. Everett,* 825 F.2d 658 (2d Cir.1987), *cert. denied,* 484 U.S. 1069, 108 S.Ct. 1035, 98 L.Ed.2d 999 (1988), the Second Circuit permitted the testimony of a bank teller and certain surveillance photographs which corroborated one bank robber's testimony used to convict the defendant bank robber pursuant to Rule 404(b). The defendant objected to the admissibility of the bank teller's testimony and the surveillance photographs.

In *Everett,* the Second Circuit noted that it had consistently held Rule 404(b) evidence of "other crimes" as admissible to corroborate crucial prosecution testimony. *Id.* at 660. However, the court warned that the prosecution "is not permitted to wholesale proof into evidence under the guise of 'corroboration purposes'." *Id.* The court then set forth the following test, "Other crimes evidence ... is only admissible for corroborative purposes, if the corroboration is 'direct and the matter corroborated is significant.'" *Id.* (quoting *United States v. Mohel,* 604 F.2d 748, 754 (2d Cir.1979) and *United States v. Williams,* 577 F.2d 188, 192 (2d Cir.), *cert. denied,* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978)). The court then construed the terms "direct" and "significant":

'Significant' evidence is usually understood to mean important—as distinct from trivial—evidence in a trial.... Here, Parks was the prosecution's only real witness. But, because of his past convictions and involvement in the instant crime, his credibility had come under heavy attack. The prosecution accordingly felt obliged to introduce proof corroborating his testimony. Thus, this 'other crimes' corroborating evidence met the test of being 'significant' because it provided 'important' details describing the formation and implementation of the appellant's plan to rob the Chemical Bank and reinforced the testimony of the key government witness against Everett.

'Direct' corroborating evidence is evidence that is not wholly disconnected, remote, or collateral to the matter corrobo-

rated. In other words, if the chain of inferences necessary to connect the corroborative evidence to the ultimate fact to be proven is too lengthy, the evidence is not *directly* corroborative; the reason is that the connection between the corroborative proof and the ultimate fact that the prosecution must prove beyond a reasonable doubt becomes too attenuated and thereby weakened in probative value. In such a case, its admission as 'other crimes' evidence is much more likely to adhere unfairly to defendant without the justifying presence of probativeness on an issue other than propensity.

*Everett,* 825 F.2d at 660.

We adopt the Second Circuit's test for the admission of Rule 404(b) evidence introduced to corroborate crucial prosecution testimony: the matter corroborated must be significant and the corroboration must be direct. In the instant case, the matter corroborated was that Mirabueno acted as appellant's trusted intermediary who purchased guns, cellular telephones, and helped him distribute cocaine. The matter corroborated is "significant" given the fact that the government's case relied heavily on Mirabueno's testimony. For three of the four counts appellant was charged with, Mirabueno was the only government witness who had observed appellant's involvement with the distribution of cocaine. Thus, the evidence at issue served to "reinforce[ ] the testimony of the key government witness" and, therefore, satisfied the "significant" prong of the test. *Id.* at 660.

The evidence at issue in the instant case also satisfies the requirement that it directly corroborate the ultimate fact to be proven. The ultimate fact the government sought to prove was that appellant sold drugs on four specific occasions. We have recognized the relationship between guns and drug dealers, particularly in the context of Rule 404(b). *United States v. Butcher,* 926 F.2d 811, 816 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2273, 114 L.Ed.2d 724 (1991). In *Butcher,* appellant contested the admissibility of narcotics found in his residence to prove that he had knowledge of the weapon found

in his car. *Id.* at 815. In addressing this issue, we said:

[E]vidence of narcotics trafficking may be properly admitted to show knowing possession of a weapon.

The court did not abuse its discretion in admitting evidence of the controlled substance in the truck and the weapons located in Butcher's residence, because the presence of the weapons in the house, and methamphetamines and paraphernalia used in the sale of this drug, was inextricably intertwined with the possession of the firearm found in the truck.

*Id.* at 816.

Similarly, in the instant case, there is a direct link between the arrest for possession of the sawed off shotguns on March 3, 1991 and the drug deliveries in the fall of 1990, January, 1991, May 29, 1991, and July 31, 1991. Evidence of appellant's arrest in March for possession of the same sawed off shotguns that Mirabueno testified she had purchased for appellant corroborated her testimony that she was his trusted intermediary who aided him in the distribution of drugs and that she had observed him in these four separate criminal transactions.

 Evidence of other crimes admitted under Rule 404(b) even if admissible must still be weighed for its probative value and potential for prejudice under Rule 403. We review the district court's decisions balancing probative value against prejudicial effect for abuse of discretion. *United States v. Kessi,* 868 F.2d 1097, 1107 (9th Cir.1989). In the case at bar, the trial court found that the evidence of the arrest for possession of sawed off shotguns was probative of Mirabueno's role as appellant's trusted intermediary who would have occasion to witness appellant's role as a drug dealer. The district court specifically weighed the two sides of the disputed evidence and determined that its probative value outweighed the prejudicial effect. Moreover, appellant specifically requested that the jury not receive an instruction limiting the shotgun evidence to its proper use. Thus, we hold the admission of the other crimes evidence was not an abuse of the trial court's broad discretion under Rule 403. *United States v. Kinslow,* 860 F.2d 963,

968 (9th Cir.1988) (district judge given wide latitude), *cert. denied*, 493 U.S. 829, 110 S.Ct. 96, 107 L.Ed.2d 60 (1989).

## IV

 Appellant argues the district court erred when it increased his offense level by two levels pursuant to U.S.S.G. § 2D1.1(b)(1) based on the two shotguns found during the traffic stop on March 3 and the shotgun found in his residence on September 27, 1991. We review the application of the Sentencing Guidelines *de novo*. *United States v. Stewart*, 926 F.2d 899, 900 (9th Cir.1991). We review the district court's finding that the defendant possessed a firearm during the commission of a narcotics offense for clear error. *Id.*

The Sentencing Guidelines provide that the trial court must increase the base offense level by two if a firearm or other dangerous weapon was possessed during the commission of a drug offense. U.S.S.G. § 2D1.1(B)(1). The Guidelines, however, also provide an exception to this rule. Application Note 3 of the Commentary to the Guidelines provides in part that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), comment. (n. 3).

In our circuit, we have defined "possession" broadly. In *United States v. Willard*, 919 F.2d 606 (9th Cir.1990), *cert. denied*, ─── U.S. ───, 112 S.Ct. 208, 116 L.Ed.2d 167 (1991), we found that where a drug dealer was arrested and admitted to being in the drug trade for years and admitted that some of the guns found at his place of business after his arrest belonged to him, the district court's finding that he possessed the guns during the criminal activity was not clearly erroneous. We held:

> Our court has not *required* the guns and drugs to be found in proximity to each other, in order to support a firearm enhancement. The proximity of guns and drugs is usually circumstantial evidence of possession during the commission of a drug offense. Any other evidence may suffice, such as appellant's admission in this case, as long as it is of a sufficient

weight to show that the defendant possessed the guns during the commission of the offense, and that it is not clearly improbable that the guns were connected with the offense.

*Id.* at 609–10 (footnote omitted); *see also Stewart*, 926 F.2d at 899 (even though guns were 15 miles from place of criminal activity, district court's finding that they were possessed for purposes of sentence enhancement was not clearly erroneous).

In *Willard*, we also considered whether a court may look to all of the offense conduct and not just the crime of conviction for purposes of the firearm enhancement. 919 F.2d at 609–610. We explained:

> We are bound by the language of the guidelines, which make clear that '*specific offense characteristics* ... shall be determined on the basis of ... all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.' U.S.S.G. § 1B1.3(a)(2) (emphasis added). Thus, for purposes of the firearm enhancement, the court properly looked to all of the offense conduct, not just the crime of conviction.

*Id.* at 610; *see also Stewart*, 926 F.2d at 901.

Appellant argues the district court erred because it looked to the entire course of conduct, i.e. the alleged drug activity over a period of time for its finding that appellant had possessed the guns during the criminal conduct. In *Stewart*, the court noted the importance of the fact that the defendant was convicted of conspiracy for its determination that the trial court had not erred in considering weapons which were found at a location 15 miles from the location of the criminal activity. The court stated:

> Another critical issue in this case is that Stewart was convicted of *conspiracy*. While the overt act of distribution of methamphetamine may well have occurred at McKenzie Highway, there is no indication that the conspiracy was limited to that site. The conspiracy charge has no definitive location, and the mere fact that the gun was not present at the place where the

overt act took place does not mean that it had no connection with the conspiracy. *Stewart,* 926 F.2d at 901–02.

 The district court considered the shotguns confiscated on March 3, 1991 as part of the "entire course of criminal conduct." U.S.S.G. § 1B1.3(a)(2). In this case, appellant was not, however, charged with conspiracy. Instead, he was charged with four separate counts of distribution. He was convicted of two of those counts, one which occurred on May 29, 1991 and one which occurred on July 31, 1991. Because the shotguns from the March 3, 1991 arrest had already been confiscated, appellant could not have "possessed" them on May 29, 1991 or July 31, 1991. Given that the guns from the March 3, 1991 arrest were confiscated and the fact that appellant was not charged with conspiracy, we hold appellant did not possess the shotguns for purposes of the May 29, 1991 and July 31, 1991 offenses. Because he no longer possessed these shotguns during the offenses for which he was convicted, the weapons certainly were not connected with them. These confiscated weapons may have been connected with appellant's earlier drug trafficking, but not with the offenses of May 29, 1991 and July 31, 1991.

The district court also considered the shotgun found in appellant's home on September 27, 1991 in applying § 2D1.1(b)(1). Based on the fact that on May 29, 1991 and July 31, 1991 appellant was living in the place where a shotgun was discovered, we conclude that (1) appellant possessed the gun during the offenses, and (2) it was not clearly improbable that the gun was connected to the offenses of conviction. Unlike the guns that were confiscated on March 3, 1991, it is possible that appellant possessed the gun found on September 27, 1991 on May 29, 1991 and July 31, 1991. Thus, we affirm the district court's conclusions that the gun discovered on September 27, 1991 was "possessed" during the offenses of conviction.

## V

Because the affidavit for the search warrant established a sufficient nexus between the place of distribution and appellant's home and because the information in the affidavit was not stale, we hold the search warrant was valid. We further hold that the district court properly admitted evidence of appellant's arrest on March 3, 1991 for the possession of sawed off shotguns to corroborate Mirabueno's testimony. Finally, we hold the district court correctly applied U.S.S.G. § 2D1.1(b)(1) to enhance appellant's sentence for possession of the shotgun found in his home on September 27, 1991.

AFFIRMED.