113 F.3d 1243
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Luis MAGALLON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert GONZALES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Luis E. ESTRADA-HERNANDEZ, Defendant-Appellant.
 Nos. 95-10438, 95-10446, 95-10447 and 96-10007.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 10, 1997.
Decided May 5, 1997.
 
 Before: HUG, Chief Judge; THOMPSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jose Louis Magallon, Robert Gonzales, Luis Enrique Estrada-Hernandez and Gerardo Delgado-Garibay appeal their jury convictions for conspiracy to manufacture and distribute methamphetamine, and/or the manufacture or aiding and abetting in the manufacture of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2. Magallon and Garibay also appeal their sentences under the Sentencing Guidelines. We have jurisdiction under 28 U.S.C. § 1291. We affirm the defendants' convictions and the district court's sentencing decisions considered in this disposition. In a separately published opinion, however, we have vacated the defendants' sentences and remanded their cases to the district court for resentencing.
 
 
 3
 The parties are familiar with the facts and we will not recite them here.
 
 1. JOSE LUIS MAGALLON
 
 4
 A. Probable Cause to Support the Search Warrant
 
 
 5
 The district court properly denied Magallon's motion to suppress the evidence found in his Gullo Avenue residence. We reject Magallon's contention that the affidavit in support of the search warrant failed to establish probable cause that he was involved in the manufacture and distribution of methamphetamine and that evidence of his involvement would be found at his residence.
 
 
 6
 The affidavit indicates that the information relating to Magallon's participation in the methamphetamine conspiracy was based on the first-hand observations of two confidential informants. The affidavit also states that much of the informants' information was tested and corroborated by agents' personal observations, record checks, prior law-enforcement contacts with the defendants, and information provided by the other informant. "Interlocking tips from different confidential informants enhance the credibility of each." United States v. Yarborough, 852 F.2d 1522, 1533 (9th Cir.1988) (quoting United States v. Landis, 726 F.2d 540, 543 (9th Cir.1984).
 
 
 7
 We conclude the information contained within the warrant was not stale. " 'The mere lapse of substantial amounts of time is not controlling in a question of staleness.' " United States v. Vaandering, 50 F.3d 696, 700 (9th Cir.1995) (quoting United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir.1993). Where, as here, " 'the evidence sought is of an ongoing criminal business ... greater lapses of time are permitted if the evidence in the affidavit shows the probable existence of the activity at an earlier time.' " Id.
 
 
 8
 The search warrant affidavit was replete with reliable, specific facts to support a finding of probable cause that Magallon was involved in a methamphetamine conspiracy and that evidence of this activity could be found at his residence.
 
 B. Franks Hearing
 
 9
 We also reject Magallon's contention that the district court erred in denying his motion for a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 155. Agent McMillen's "omission" was not necessary to the magistrate's finding of probable cause. In light of all of the officers' corroborating information about the connections between Magallon and Garibay, probable cause to search Magallon's residence would exist even if the magistrate had not been informed that Agent McMillen stated in a prior affidavit that the informant referred to the now named individuals (including Magallon) as "unknown." Thus, the information was not necessary to the finding of probable cause and the district court did not err in denying Magallon a Franks hearing.
 
 C. Instructional Error Regarding Conspiracy
 
 10
 We also reject Magallon's argument that the district court committed plain error by failing to sua sponte instruct the jury that it could not convict him where the only co-conspirator was a government informant. Because Magallon did not request such an instruction at trial, we review only for plain error. United States v. Bracy, 67 F.3d 1421, 1431 (9th Cir.1995); see also Fed.R.Crim.P. 52(b).
 
 
 11
 Magallon is correct that a defendant may not be convicted of conspiracy where the only co-conspirator is a government agent or informant. See United States v. Escobar de Bright, 742 F.2d 1196, 1199-1200 (9th Cir.1984). Magallon cites no authority, however, for his assertion that the jury must be told this whenever the evidence shows that a government agent or informant has become involved in the criminal conduct which forms the basis of a conspiracy charge. A defendant is entitled to a particular jury instruction only where it has some foundation in the evidence. See Escobar de Bright, 742 F.2d at 1198. The evidence in this case clearly demonstrated that Magallon conspired with Garibay, Estrada-Hernandez, Robert Gonzales and many other individuals. It is simply impossible that the jury could have found Magallon guilty of conspiring with only Cesar Romero. The evidence did not support such a finding, nor was that ever Magallon's theory of the case. It was not plain error not to sua sponte give the instruction Magallon now seeks.
 
 
 12
 D. Instructional Error Regarding Aiding and Abetting
 
 
 13
 We also reject Magallon's argument that the district court's jury instruction on aiding and abetting was vague and confusing. The instruction to which Magallon objects is part of the Model Criminal Jury Instruction for the Ninth Circuit § 5.01. It reads:
 
 
 14
 The government is not required to prove precisely which individual actually committed the crime and which individual aided and abetted.
 
 
 15
 When reviewing a jury instruction, we consider the instructions as a whole and determine whether the jury would have reasonably understood them or whether they were misleading or inadequate to guide the jury's deliberations. United States v. Warren, 25 F.3d 890, 897 (9th Cir.1994). The instructions here, viewed as a whole, were adequate. The jury was instructed correctly as to each element which needed to be proved beyond a reasonable doubt to convict Magallon of manufacturing or aiding and abetting in the manufacture of methamphetamine. The portion of the instructions to which Magallon objects is a correct statement of the law and could not have confused the jury as to the elements needed for conviction or the burden of proof requirement. See Vaandering, 50 F.3d at 702.
 
 E. Sufficiency of the Evidence
 
 16
 The evidence was more than sufficient for a rational jury to find Magallon guilty of conspiring to manufacture, distribute and possess methamphetamine with intent to distribute. Cesar Romero testified that he was present at the laboratory site where Magallon and others manufactured about 100 pounds of methamphetamine. He specifically described the "cooking" activities that transpired over the next few days, and he accurately described the location of the site and the manufacturing process. The government introduced ample evidence to corroborate Romero's testimony.
 
 
 17
 Magallon argues that rational jurors could not have found Romero's testimony sufficiently credible to support his conviction. However, when a jury is informed of challenges to a witness' credibility and nevertheless believes the witness, we do not review the jury's credibility determinations on appeal. United States v. Leung, 35 F.3d 1402, 1405 (9th Cir.1994), cert. denied, 115 S.Ct. 954 (1995). Here, Romero was subject to full cross-examination by the defense, and the jury was informed that he was a paid informant.
 
 II. ROBERT GONZALES
 A. Ineffective Assistance of Counsel
 
 18
 Robert Gonzales argues that he was denied his Sixth Amendment right to the effective assistance of counsel because his attorney failed to file pretrial motions (1) to suppress the evidence found at the Vincent Ranch, and (2) to sever Gonzales's trial from the trial of some of the other defendants. The record is not sufficiently developed for us to consider the merits of Gonzales's claims of ineffective assistance of counsel on direct appeal. Claims of ineffective assistance of counsel should generally be brought in a collateral proceeding under 28 U.S.C. § 2255 and will ordinarily not be considered on direct appeal because the appellate record often lacks a sufficient evidentiary basis as to "what counsel did, why it was done, and what, if any, prejudice resulted." United States v. Quintero-Barraza, 78 F.3d 1344, 1347 (9th Cir.1995), cert. denied, 117 S.Ct. 135 (1996).
 
 
 19
 Here, although the record is clear that trial counsel did not file motions to suppress the evidence found at Vincent Ranch or to sever defendant's trial from the trials of others, the record is not developed as to why trial counsel did not file these motions. Further, the record before us is insufficient to determine whether there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. Id. at 1347. The record does not contain all the facts necessary to estimate the likely success of these motions. Gonzales urges us to presume prejudice whenever counsel fails to preserve any potentially viable issue for appeal. That is simply not the law of this Circuit or the law set out by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 691-95 (1984). Thus, we decline to address the merits of Gonzales's ineffective assistance of counsel arguments.
 
 B. Plain Error
 
 20
 1. Failure to Suppress Evidence Found at Vincent Ranch
 
 
 21
 It was not plain error to admit the evidence seized at the Vincent Ranch because it was not at all clear from the record before the district court that the evidence was tainted by an illegal search. Agent Buford did not violate Gonzales's legitimate expectation of privacy to the extent he limited his initial search to "open fields." See United States v. Broadhurst, 805 F.2d 849, 855 n. 9 (9th Cir.1986). There is nothing in the record which clearly indicates Agent Buford's search went beyond this point. To the extent that the facts necessary to make this determination do not appear in the record, we can not say the failure to suppress the evidence sua sponte was plain error.
 
 2. Failure to Sever Gonzales's Trial
 
 22
 The district court did not commit plain error by failing to sever sua sponte Gonzales's trial from the trial of his codefendants. Gonzales has failed to demonstrate that the failure to sever compromised any specific trial right or prevented the jury from making a reliable judgment as to his guilt. He has not pointed to any evidence that was admissible against the other defendants but would not have been admissible against him in a separate trial as a member of the charged conspiracy. See Zafiro, 506 U.S. at 539. We disagree with Gonzales's assertions that the criminal acts of all the defendants were not related to the criminal charges against him. All of these activities were in furtherance of the same conspiracy. Thus, the district court did not plainly err in failing to sua sponte sever Gonzales's trial from the trial of his codefendants.
 
 III. LUIS ENRIQUE ESTRADA-HERNANDEZ
 A. Sufficiency of the Evidence
 
 23
 Hernandez argues the government failed to prove he knew that hydriodic acid was used to manufacture methamphetamine. In United States v. Vizcarra-Martinez, 66 F.3d 1006 (9th Cir.1995), we held that the defendant's conduct at the scene of the crime plus other circumstantial evidence can establish the defendant's knowing participation in a drug conspiracy. Id. at 1010. Here, the government presented corroborated evidence that Hernandez participated in a three-day methamphetamine manufacture at the Vincent Ranch in December, 1993. This evidence was sufficient to prove Hernandez's knowledge of the conspiracy and his knowing participation in it.
 
 B. Denial of Motion for New Trial
 
 24
 Hernandez next argues that the district court erred by denying his motion for a new trial. Federal Rule of Criminal Procedure 33 provides that a motion for new trial based on grounds other than newly discovered evidence must be made within seven days after the verdict. Fed.R.Crim.Pro. 33; United States v. Endicott, 869 F.2d 452, 457 (9th Cir.1989). Here, the district court record indicates that Hernandez never filed a motion for a new trial. The district court plainly did not err in failing to rule on a motion that was never filed.
 
 IV. GERARDO DELGADO-GARIBAY
 A. Ineffective Assistance of Counsel
 
 25
 Garibay argues that his trial counsel was ineffective because he did not timely file a motion to suppress the contents of the Casio databank that was seized from Garibay during a routine traffic stop. The record before us is sufficiently complete to consider the merits of Garibay's ineffective assistance argument on direct appeal. See United States v. Quintero-Barraza, 78 F.3d 1344, 1347 (9th Cir.1995), cert. denied, 117 S.Ct. 135 (1996).
 
 
 26
 We conclude that Garibay's ineffective assistance of counsel argument is without merit because there is no reasonable probability that his counsel's alleged errors were prejudicial. Even had his trial counsel successfully suppressed the Casio databank and all the information stored in it (which we doubt he could have done), the overwhelming evidence of Garibay's guilt was such that he can not show "but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." See Strickland v. Washington, 466 U.S. 668, 694 (1984).
 
 
 27
 B. Factual Findings In Sentencing--Amount of Methamphetamine
 
 
 28
 The district court's finding that Garibay's crime involved at least 100 pounds of methamphetamine is not clearly erroneous. Where, as here, "there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of controlled substance." USSG § 2D1.1, comment. (n. 12); see also United States v. Basinger, 60 F.3d 1400, 1409 (9th Cir.1995). In United States v. Williams, 989 F.2d 1061, 1072-74 (9th Cir.1993), we affirmed the district court's estimate of the quantity of methamphetamine manufactured where it was based on the capacity of the empty glassware, the presence of some, but not all, precursor chemicals, and on the assumption that a partially-filled chemical container had been full. Id.
 
 
 29
 The evidence before the district court here was more than sufficient to establish that the methamphetamine conspiracy involved at least 100 pounds. Cesar Romero testified that he heard Garibay acknowledge that 40 pounds of methamphetamine had been manufactured in the first batch of drugs made at the December, 1993 "cook." He further testified that he witnessed Garibay and others weigh the second batch, which weighed about 74 pounds. The government's chemist testified that the equipment he found at the site was consistent with the manufacture of 100 pounds of methamphetamine, and the red phosphorous found at the site could be used to produce an additional 50-100 pounds of the drug. The government also produced evidence that Garibay's manufacturing activities at the Vincent Ranch was an ongoing enterprise between April, 1993 and January, 1994. Gonzales told James that the "border brothers" manufactured methamphetamine at the site once or twice a month in exchange for two pounds of methamphetamine each time. He also told James that the defendants made from one to one hundred pounds of methamphetamine at a time. Wilson testified that he obtained freshly manufactured methamphetamine from Gonzales four or five times from July through December of 1993. Gonzales told Wilson that he was getting the drugs from "Tio" (Garibay) and "his crew" who were making it at the Vincent Ranch. The chemicals that were purchased by and/or seized from various members of the conspiracy were sufficient to manufacture well over 100 pounds of methamphetamine. In light of this evidence, the district court did not clearly err in determining the conspiracy involved at least 100 pounds of methamphetamine and in calculating Garibay's base offense level accordingly.
 
 
 30
 C. Factual Findings at Sentencing--Garibay's Leadership Role
 
 
 31
 We reject Garibay's argument that the district court erred in finding that he was a leader and organizer in a crime involving more than five participants under USSG § 3B1.1(a). The evidence clearly showed that Garibay played a leadership role, and that well over five participants were involved in the criminal conspiracy.
 
 
 32
 Garibay argues that the district court's finding rested on the unreliable testimony of paid informants. This argument is meritless. It challenges the credibility of witnesses, a matter on which we defer to the district court. United States v. Kaufman, 862 F.2d 236, 238 (9th Cir.1988).
 
 
 33
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3