142 F.3d 446
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Guillermo GUERENA, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Ernest Garcia, Defendant-Appellant.
 Nos. 97-50052, 97-50178.
D.C. No. CR-95-01365-3-IEG.
D.C. No. CR-95-01365-IEG.
 United States Court of Appeals,
Ninth Circuit.
 .
Argued and Submitted April 8, 1998.
Decided April 20, 1998.
 
 Appeal from the United States District Court for the Southern District of California, Irma Gonzalez, Magistrate, Presiding.
 Before FARRIS, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*.
 
 A. Validity of the Search Warrants
 
 2
 We review de novo the district court's determination that probable cause supported the warrants for 4370 Clubhouse Drive, 200 Hernandez Street, and 1610 Smoketree Drive. United States v. Hernandez, 80 F.3d 1253, 1258 (9th Cir.1996). We affirm.
 
 1. Overbreadth and Staleness
 
 3
 A warrant's terms need only be "reasonably specific, rather than elaborately detailed." United States v. Brock, 667 F.2d 1311, 1322 (9th Cir.1982). The seizing language must make reference to the specific crimes suspected and must provide guidance as to the types of documents to be seized and how they relate to specific criminal activity. United States v. Kow, 58 F.3d 423, 427 (9th Cir.1995); Center Art Galleries-Hawaii, Inc. v. United States, 875 F.2d 747 (9th Cir.1989). All three search warrants identified specific categories of items to be seized and made clear to agents how the items sought related to the charged cocaine conspiracy. The warrants, therefore, were not overbroad. See Center Art, 875 F.2d at 750; Kow, 58 F.2d at 427.
 
 
 4
 The warrants did not rely upon stale information to establish probable cause. A search warrant is not stale so long as "there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises." United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986) (quoting United States v. Gann, 732 F.2d 714, 722 (9th Cir.1984)) (internal quotation marks omitted). In all three cases the warrants relied largely upon accounts of transactions that occurred between October 1994 and January 1995, eight to twelve months prior to the searches. Those accounts, however, were supplemented by information from reliable informants that Garcia and Guerena were still smuggling as of August 1995, two months before the searches. The continuing pattern of their conspiracy made it reasonable to believe that documentation and records of the smuggling could still be found as of October 5, 1995. United States v. Vaandering, 50 F.3d 696, 700 (9th Cir.1995) (holding that 22-month-old information not stale when coupled with more recent facts); United States v. Pitts, 6 F.3d 1366, 1369-70 (9th Cir.1993) (holding that information about four-month-old drug sale was not stale).
 
 
 5
 2. Nexus Between Items Sought and Places Searched
 
 
 6
 "Probable cause to believe that a suspect has committed a crime is not, ... by itself, adequate to obtain a search warrant for the suspect's home." Id. An affidavit must create a nexus between illegal drug activity and the specific residence to be searched. Id.
 
 
 7
 The magistrate "need not determine ... that the evidence is more likely than not to be found where the searches take place." United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir.1985). It is sufficient to conclude that it would be reasonable to look for the evidence in the place indicated in the affidavit. Id; United States v. Garcia-Cruz, 978 F.2d 537, 541 (9th. Cir.1992). We have explained that "a magistrate may draw reasonable inferences about where evidence is likely to be kept.... We have previously recognized that '[i]n the case of drug dealers, evidence is likely to be found where the dealers live.' " United States v. Garza, 980 F.2d 546, 551 (9th Cir.1992) (quoting United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986)) (internal quotation marks omitted); see United States v. Bowers, 534 F.2d 186, 192 (9th Cir.1976).
 
 
 8
 We need not reach the question of whether there was probable cause to believe that the items searched could still be found in the places to be searched. A motion to suppress is properly denied where the investigating agents had a reasonable, good faith belief in the validity of the warrant. United States v. Leon, 468 U.S. 897, 920 (1984). For suppression to be appropriate, the facts set forth in the affidavit supporting the warrant must be "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923 (quoting Brown v.. Illinois, 422 U.S. 590, 610-11, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)) (internal quotations omitted).
 
 
 9
 The Clubhouse Drive warrant was supported by information from a reliable informant that Garcia was staying at the residence and was holding more than $1,000,000 there, as well as the fact that officers had observed a transaction in front of the residence during which Garcia passed a small white bag, suspected to contain cocaine, to a man who then placed the bag in his trunk.
 
 
 10
 The Hernandez Street warrant was supported by a confidential informant who told investigators that he had participated in a border-crossing with Garcia and Guerena in October, 1994, and that, following the crossing, Garcia had been dropped off at the Hernandez Street residence. The informant said that Hernandez Street was used as a drop-off point during cocaine-smuggling operations between October 1994 and January 1995. The informant said that Guerena told him that the Hernandez Street house was used as a place to count money to be paid to co-conspirators. Further, phone records revealed that, on eight of the eleven days between October 1994 and January 1995 when suspected loads of cocaine were brought across the border, Garcia placed phone calls to the Hernandez Street residence. Most of the calls occurred within an hour of the border crossings. Garcia provided 200 Hernandez Street as a mailing address to a realtor on August 30, 1995.
 
 
 11
 The Smoketree Drive warrant established the nexus principally through: 1) the affiant's frequent observations of vehicles suspected to be loaded with cocaine parked in front of the residence; 2) information from an informant that Guerena stashed and distributed cocaine from an accomplice's apartment located 100 yards from Guerena's Smoketree Drive residence; and 3) the fact that Guerena resided at Smoketree Drive and was a significant participant in the smuggling conspiracy at least through August, 1995.
 
 
 12
 The facts supporting each warrant created sufficient indicia of probable cause. See Leon, 468 U.S. at 916. We recognized in Bowers that 1) in the case of drug dealers, evidence is likely to be found where dealers live and 2) magistrates may draw reasonable inferences from this fact. Bowers, 534 F.2d at 192. Having presented "colorable showings" with at least some indicia of probable cause, the affiants were not "required to disbelieve" the impartial magistrates who signed the warrants. Massachusetts v.. Sheppard, 468 U.S. 981, 989-90, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).
 
 
 13
 B. Admission of the Mexican Cellular Phone Records
 
 
 14
 We find no abuse of discretion in the district court's decision to admit Mexican cellular phone records into evidence. Authentication of evidence is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a); see United States v. Workinger, 90 F.3d 1409, 1415 (9th Cir.1996). Documents may be authenticated through "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Fed.R.Evid. 901(b)(4); see United States v. Green, 40 F.3d 1167, 1173 (11th Cir.1994). The government need only make a prima facie showing of authenticity "so that a reasonable juror could find in favor of authenticity or identification." Workinger, 90 F.3d at 1415 (quoting United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir.1991)) (internal quotation marks omitted).
 
 
 15
 The government could not authenticate the records through their custodian at Baja Cellular, but the government's two American witnesses were able to testify that the records listed the dates, times, and numbers called in a pattern unique to cellular telephone bills and appeared authentic. These witnesses identified enough of the appearance, content, and internal patterns of the phone bills to create a prima facie case of authenticity. See id.
 
 
 16
 There was no alternative source by which the government could have proven when and to whom Garcia had placed calls using his cellular phone. The records were necessary to corroborate Ms. Zamayoa's testimony. The fact that the records are computer generated and, according to one witness, could not be easily replicated suggests reliability. It was not error to admit the records pursuant to the residual hearsay exception. Fed.R.Evid. 803(24).
 
 
 17
 C. Confrontation Clause and Misconduct Claims
 
 
 18
 It was not error to deny Garcia's motion for mistrial based on references to Nora Chavez. An out-of-court statement constitutes hearsay only when offered to prove the truth of the matter asserted. Fed.R.Evid. 801(c). Whether Nora Chavez's statement about Eng's involvement was true was never at issue. The government merely introduced the testimony to show that it was Chavez, rather than Zamayoa, who had led investigators to Eng, thereby rebutting the defense's implication that Zamayoa had persuaded Eng to corroborate her testimony. The testimony is not hearsay. See United States v. Lopez-Alvarez, 970 F.2d 583, 587 (9th Cir.1992). Its admission does not create a problem under Bruton.
 
 
 19
 The government's reference to the testimony during its closing argument was not misconduct. A prosecutor commits misconduct where he presents evidence to the jury that is false or otherwise patently inadmissible. United States v. Molina, 934 F.2d 1440 (9th Cir.1991). Counsel for the government said during closing that "the Government first found out about Eng from Nora Chavez." To the extent that the statement was misleading, the government offered to stipulate that they did not learn of the name Beatriz Eng from Nora Chavez, but that they had used evidence provided by Chavez to eventually identify Eng. The defense decided not to use the offered stipulation. The government cannot be considered guilty of misconduct.
 
 
 20
 Even if there were misconduct, Guerena and Garcia would be entitled to a new trial only where there is a reasonable probability that without the misconduct, "the result of the proceeding would have been different." United States v. Young, 17 F.3d 1201, 1204 (9th Cir.1994) (quoting United States v. Endicott, 869 F.2d 452, 455 (9th Cir.1989)). The difference between being provided with Eng's name and being provided with evidence that leads to Eng's identity is not great enough to cast reasonable doubt on the jury's verdict. The district court did not err in denying Garcia's motion for a mistrial.
 
 
 21
 D. Withholding of Relevant Impeachment Evidence
 
 
 22
 It was not error to find no Brady violation from the government's delay in turning over rough notes of Denise Zamayoa's interview. No Brady violation occurs where disclosure is made early enough so that the favorable material can still be used, even if trial has already started. United States v. Alvarez, 86 F.3d 901, 904-05 (9th Cir.1996) (holding no violation where rough notes turned over to defense halfway through trial). Garcia and Guerena obtained the notes five days before Zamayoa testified.[1] Those five days gave defense counsel ample time to determine its strategy for discrediting Zamayoa based on her admission during the interviews. See id. Moreover, Garcia and Guerena point to no evidence tending to show that, had the notes been turned over sooner, the outcome of the trial would have been different. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Although Zamayoa had been scheduled to testify the day after the government turned over the notes, her testimony was delayed four more days