**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Dawn Michelle EATON, Defendant—
Appellant.**

**No. 03–30313.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 3, 2004.

Decided May 6, 2004.

Leslie K. Baker, Esq., United States Of Attorney's Office, Eugene, OR, for Plaintiff–Appellee.

J. Henry Langer, Salem, OR, for Defendant–Appellant.

Before: REINHARDT, SILVERMAN, and CLIFTON, Circuit Judges.

MEMORANDUM *

Dawn Michelle Eaton appeals from a conviction following her conditional guilty

* This disposition is not appropriate for publica-     tion and may not be cited to or by the courts

plea for conspiracy to manufacture, possess, and distribute methamphetamine ("meth") in violation of 21 U.S.C. §§ 846 & 841(a)(1). Eaton claims that she was arrested without probable cause, and that her apartment was searched without probable cause or exigent circumstances to enter without a warrant. She further argues that she should have been afforded a *Franks* hearing. We affirm.

■ 1. The officers had probable cause to arrest Eaton. Several law enforcement officers arrested Eaton and her companion, Chad Luton, after a brief encounter outside of Eaton's apartment. The officers had gone to Eaton's apartment searching for Gordon Milligan, who they reasonably suspected was a "meth cook." [1] The officers knew that Eaton was a meth user based on a prior encounter with her. They also suspected Eaton to be involved with Milligan in meth production and distribution. The officers encountered Chad Luton upon arrival. One of the officers immediately recognized Luton from a 1999 interview, in which Luton had spoken about the details of meth production in such intricate detail as to create reasonable suspicion that he also was a meth cook.

Deputy Anderson, while standing next to the door of the apartment, detected a "fairly strong" odor coming from inside the apartment. He described the odor as a distinctive smell he associated – based on four and a half years of training in hazardous materials detection and over a hundred investigations of meth laboratories – with the operation of a clandestine meth lab.

These circumstances created sufficient probable cause to arrest Eaton. "[U]nder the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [Eaton] had committed a crime." *United States v. Potter*, 895 F.2d 1231, 1233–34 (9th Cir.) (citation and quotation marks omitted), *cert. denied*, 497 U.S. 1008, 110 S.Ct. 3247, 111 L.Ed.2d 757 (1990). Given that the officers had prior suspicions that Eaton may have been involved in meth production, their detection of a distinctive odor "they knew was associated with making" the drug was enough to create probable cause under this court's precedent. *See United States v. Lillard*, 929 F.2d 500, 502 (9th Cir.1991). [2]

■ 2. The officers had exigent circumstances to enter Eaton's apartment. After arresting Eaton, the officers unsuccessfully attempted to obtain consent to search the apartment. At the time he requested such consent, Deputy Kubic placed his nose close to the apartment door and detected a "faint odor that I know is associated with the clandestine production of methamphetamine." He based his conclusion on five years of experience in drug investigations, specialized training in investigating meth laboratories, and over 40 investigations of clandestine meth labs each year. Although the testimony provided by Eaton's expert suggests

of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The officers had encountered Milligan at Eaton's apartment previously. During that encounter, Eaton had initially alleged that Milligan was not present, only later to admit that he was.

2. Eaton's claim that the officers based their probable cause determination on stale information is unsupported by any of the cases she cites. We have held that "greater lapses of time are permitted" when ongoing activity, such as the manufacture of illicit narcotics, is suspected. *See United States v. Lacy*, 119 F.3d 742, 745–46 (9th Cir.1997), *cert. denied*, 465 U.S. 1101, 118 S.Ct. 1571, 140 L.Ed.2d 804 (1998); *United States v. Pitts*, 6 F.3d 1366, 1369–70 (9th Cir.1993).

that it is possible that the officers were mistaken in believing that the odor they detected actually was the smell of meth "cooking," no evidence in the record contradicts the officers' testimony that they had a "reasonable belief, under the circumstances, that a methamphetamine laboratory was in operation." *United States v. Whitten,* 706 F.2d 1000, 1014 (9th Cir. 1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). Under such circumstances, we have held that exigent circumstances justify warrantless "protective sweeps" like the brief entry the officers conducted here. *See id.; see also United States v. Wilson,* 865 F.2d 215, 216–17 (9th Cir.1989); *United States v. Echegoyen,* 799 F.2d 1271, 1278–80 (9th Cir.1986).

3. The district court did not err in denying Eaton a *Franks* hearing. Eaton has failed to show "intentional or reckless inclusion or omission" or "materiality" as required under *United States v. Bennett,* 219 F.3d 1117, 1124 (9th Cir.2000), *cert. denied,* 531 U.S. 1056, 121 S.Ct. 666, 148 L.Ed.2d 568 (2000).

AFFIRMED.