28 F.3d 108
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Luis BANDA-GUTIERREZ, Defendant-Appellant.
 No. 93-30215.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 6, 1994.*
Decided June 20, 1994.
 
 Before: WRIGHT, WIGGINS and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Jose Luis Banda-Gutierrez (Banda) appeals his jury conviction for possession of controlled substances with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1); and possession of a firearm during a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c)(1). He argues the affidavit supporting the government's search warrants did not establish probable cause, the warrants were overly broad, the trial court erroneously read back testimony to the jury, the jury was prejudiced by allegations Banda used a minor in a narcotics transaction, and there was insufficient evidence to support a finding he possessed either a firearm in relation to a drug transaction or marijuana with intent to distribute. We affirm.
 
 FACTS
 
 3
 On November 4, 1992, in response to an affidavit furnished by Detective Gary Kouba, a search warrant was issued for the premises at 550 Chappel Road in Moxee, Washington, Banda's residence. Upon executing the warrant, law enforcement officers discovered Banda and a minor in the residence, as well as a loaded 9 millimeter pistol, $14,780 in cash, a telephone paging device, 1000 grams of cocaine, and 690 grams of marijuana.
 
 
 4
 The following day, November 5, 1992, the officers obtained another search warrant for 550 Chappel Road. They discovered 10 kilograms of cocaine hidden in a Ford Thunderbird, registered to Banda and parked in an attached garage. They also found over 3 kilograms of cocaine hidden in a shed on the property.
 
 
 5
 After the seizure, the Yakima Narcotics Unit attempted to obtain fingerprints from the packages containing the cocaine. A technician found partial fingerprints that were insufficient for identification. However, the government did not provide Banda with the technician's report, or otherwise indicate any attempt was made to obtain fingerprints, until after the trial began. The district court denied Banda's motion for a continuance to obtain an expert analysis of the fingerprints.
 
 
 6
 During jury deliberations, the jury requested the court read a portion of Detective Kouba's testimony concerning the location of the Thunderbird on November 4. At the direction of the court, the court reporter read the jury extended portions of Kouba's testimony. Approximately 25 minutes later, the jury returned guilty verdicts. The court sentenced Banda to 193 months incarceration, to be followed by 5 years supervised release.
 
 
 7
 This appeal followed.
 
 DISCUSSION
 A. The Search Warrants
 1. Probable Cause
 
 8
 Banda contends Detective Kouba's affidavit fails to establish probable cause because (1) it contains no information from which to assess the informant's reliability or veracity, and (2) the information was stale.
 
 
 9
 The affidavit sets forth the following facts:
 
 
 10
 1. The execution of a search warrant on November 4, 1992, at 4005 West Walnut, resulted in the seizure of one-quarter ounce of cocaine and the arrest of Antonio Galvan.
 
 
 11
 2. Galvan agreed to cooperate with the Yakima Narcotics Unit in return for leniency.
 
 
 12
 3. Galvan placed a phone call to the source of his cocaine. Galvan received a call at 11:20 a.m. from a woman named Anna who stated she was in Moxee, Washington, weighing out the cocaine, and would arrive in one-half hour.
 
 
 13
 4. Manuel and Anita Farias were arrested at 11:55 after arriving with a quarter kilo of cocaine. Anita Farias agreed to cooperate in exchange for leniency.
 
 
 14
 5. Detective Gary Kouba accompanied Ms. Farias to Moxee.
 
 
 15
 6. Ms. Farias claimed she and her husband obtained the cocaine from Jose Banda. Farias stated she and her husband met Banda at 550 Chappel Road, and Banda followed them to the parking lot of Albertson's, where Banda provided them with the cocaine.
 
 
 16
 7. Farias stated Banda lived at 550 Chappel Road. She also stated 550 Chappel Road was her former residence. Her vehicle was registered at 550 Chappel Road.
 
 
 17
 8. Farias stated she saw multiple kilograms of cocaine delivered to 550 Chappel Road on October 16, 1992.
 
 
 18
 9. Officers observed a vehicle registered to Banda parked at 550 Chappel Road.
 
 
 19
 The affidavit reveals nothing about the veracity or reliability of the informant, Anita Farias, or her husband, Manuel. However, the affidavit reveals an investigation corroborating several details in Anita Farias's statements. She stated she previously resided at 550 Chappel Road, and, as noted in the affidavit, her vehicle registration corroborated this fact. She also stated Banda resided at 550 Chappel Road, which was corroborated by other information in the affidavit that Banda's vehicle was registered to that address and was parked there. Because information obtained in the investigation, and set forth in the affidavit, corroborated details of Anita Farias's statements, the lack of evidence demonstrating her veracity is not critical. Illinois v. Gates, 462 U.S. 213, 233-35 (1983); United States v. Angulo-Lopez, 791 F.2d 1394, 1397 (9th Cir.1986); United States v. Roberts, 747 F.2d 537, 543 (9th Cir.1984).
 
 
 20
 Furthermore, the affidavit contains information demonstrating the basis for Anita Farias's knowledge. The affidavit discloses that she personally saw multiple kilograms of cocaine being delivered to the premises at 550 Chappel Road nineteen days before the application for the search warrant. In addition, she and Manuel Farias received cocaine from Banda on the date of the application for the warrant.
 
 
 21
 We conclude that, under the totality of the circumstances, the magistrate's finding of probable cause is supported by substantial evidence.
 
 2. Staleness of Information
 
 22
 Banda argues the affidavit is deficient because it contains no evidence that cocaine was on the premises at 550 Chappel Road on November 4, 1992, the date the warrant was obtained and executed. He also points out the affidavit merely discloses that Anita Farias saw kilograms of cocaine being delivered to the premises nineteen days earlier; there is no assertion in the affidavit that controlled substances were stored on the premises at 550 Chappel Road.
 
 
 23
 We reject this argument. "The mere lapse of substantial amounts of time is not controlling in a question of staleness." United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir.1993) (quoting United States v. Dozier, 844 F.2d 701, 707 (9th Cir.), cert. denied, 488 U.S. 927 (1988)). We evaluate staleness "in light of the particular facts of the case and the nature of the criminal activity and property sought." United States v. Greany, 929 F.2d 523, 525 (9th Cir.1991). "With respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity." Pitts, 6 F.3d at 1369 (internal quotations omitted).
 
 
 24
 The affidavit disclosed evidence of drug trafficking at the Chappel Road premises. The affidavit contains information from Anita Farias that she and her husband ordered 9 ounces of cocaine from Banda, met him at the Chappel Road residence, and that he delivered cocaine to them in the Albertson's parking lot, all on the same day Banda was arrested, November 4, 1992. From this evidence, and from the evidence Banda lived at the Chappel Road residence, a magistrate could reasonably conclude illicit drugs would likely be found there on November 4, 1992. See id. ("In the Ninth Circuit, we have recognized that [i]n the case of drug dealers, evidence is likely to be found where the dealers live.") (internal quotations omitted).
 
 3. Overbreadth
 
 25
 a. The November 4, 1992 Search Warrant
 
 
 26
 The affidavit in support of the November 4, 1992 search warrant indicated that at 550 Chappel Road were a residence, a mobile home, several wood sheds, a satellite dish, a small orchard with approximately twenty trees, and a detached garage. The affidavit also stated Banda's car was parked in the driveway.
 
 
 27
 The November 4, 1992 warrant authorized a search of all buildings and outbuildings at 550 Chappel Road, and all "property real or personal situated on said described property." The warrant also included an order to seize any property used in the illegal manufacture, sale, distribution, or disposal of drugs, and personal property tending to show dominion and control of such drugs.
 
 
 28
 A "warrant's description of items [to be seized] ... need only be reasonably specific, rather than elaborately detailed." United States v. Rodriguez, 869 F.2d 479, 486 (9th Cir.1989) (internal quotations omitted). Considering the portability of controlled substances, and the many locations on the property where drugs could be hidden, the warrant issued November 4, 1992, was not overly broad.
 
 
 29
 b. The November 5, 1992 Search Warrant
 
 
 30
 The affidavit in support of the November 5, 1992 search warrant recites the same facts contained in the November 4 affidavit. In addition, the November 5 affidavit recounts the successes of the November 4 search. Specifically, the November 5 affidavit states the government found one ounce of cocaine in a bedroom, over $13,000 in cash, a loaded handgun, and, "[l]ocated outside the residence, hidden under and in two abandoned sheds on the property, was approximately two (2) pounds of marijuana, over 900 grams of cocaine, some of which was repackaged for sale and two triple beam gram scales."
 
 
 31
 The November 5 affidavit also indicated the information provided by Anita Farias for the November 4 search was accurate, and she believed more cocaine was "buried somewhere to the west of the residence." The affidavit also disclosed Anita Farias said she "overheard statements by Jose Banda" that Banda had purchased a plastic barrel to act as a storage container for multi kilograms of cocaine and cash, and had buried this barrel in the area behind the residence at 550 Chappel Road. The affidavit noted several areas of fresh dirt were visible on the property, although darkness forced the government to abandon the November 4 search.
 
 
 32
 Although the warrant issued November 5, 1992 is broad enough to cover what was searched, Banda contends the officers, by the language of the affidavit in support of the warrant, sought to limit the scope of the search to items buried underground. We disagree. The affidavit states, "[d]ue to darkness and weather conditions officers were unable to make a complete search of the property which would include checking the area beneath areas which show recent signs of diggage."
 
 
 33
 The plain language in the affidavit in support of the November 5 search warrant indicates the officers wanted to search all of the property not searched the previous day, including portions of the property where items might be buried. Additionally, the affidavit indicated cocaine was found in the home itself. When contraband is found in a house, search of a garage on the premises may be authorized. United States v. Whitten, 706 F.2d 1000, 1008-09 (9th Cir.1983), cert. denied, 465 U.S. 1100 (1984). The warrant issued November 5, 1992 was not overly broad, nor limited, as Banda argues, by the affidavit furnished in support of it.
 
 B. The Witness Testimony Read to the Jury
 
 34
 During deliberations, the jury sent the court a note asking whether the Thunderbird automobile was in the garage at the Chappel Road residence on November 4. Detective Kouba had testified the Thunderbird was in the garage on November 5.
 
 
 35
 The court conferred with both defense and prosecution counsel, solicited their advice as to how to respond to the jury's inquiry, and then had extensive portions of Kouba's testimony read to the jury.
 
 
 36
 Banda argues the court abused its discretion by having this testimony read, because it emphasized Kouba's testimony instead of simply responding to the jury's specific question. Banda contends the seriousness of this error is reflected by the fact that the jury returned its verdict 25 minutes after Kouba's testimony was read to them.
 
 
 37
 The district court did not abuse its discretion by having Kouba's testimony read. The court sought to avoid undue emphasis on any single portion of the testimony by having extensive portions of it read, both on direct and cross-examination. See United States v. Nickell, 883 F.2d 824, 829 (9th Cir.1989). Moreover, the court instructed the jury, both before and after the testimony was read, not to place undue emphasis on it, and to consider Kouba's testimony only in combination with all other evidence presented during the trial. See United States v. Sandoval, 990 F.2d 481, 487 (9th Cir.), cert. denied, 114 S.Ct. 218 (1993).
 
 
 38
 The circumstance that the jury returned its verdict 25 minutes after Kouba's testimony was read does not suggest, as Banda argues, that the jury placed undue emphasis on it. In United States v. King, 552 F.2d 833 (9th Cir.1976), cert. denied, 430 U.S. 966 (1977), the defendant also argued the speed with which the jury reached its verdict after having testimony read during deliberations attested to placing undue emphasis on the testimony. We rejected that argument in King, stating,
 
 
 39
 We think that other conclusions not inconsistent with careful consideration of the evidence as a whole are possible. The jury may have already reached a verdict and merely desired a confirming clarification on one point; the clarification on a point may have been the "straw that broke the camel's back" in swaying a verdict properly based on the totality of the evidence.
 
 
 40
 Id. at 850.
 
 
 41
 A court's decision to read portions of testimony to the jury lies within its sound discretion. Nickell, 883 F.2d at 829. The district court did not abuse that discretion.
 
 C. The Fingerprint Tests
 
 42
 Banda argues the state's delay in revealing the existence of fingerprint tests on the cocaine packages violated his right to disclosure of exculpatory materials under Brady v. Maryland, 373 U.S. 83 (1963). Brady proscribes prosecutorial suppression of exculpatory evidence that is "material" to either guilt or punishment. Brady, 373 U.S. at 87. The government's information need not be disclosed prior to trial, however, so long as the defense receives the information "at a time when the disclosure would be of value to the accused." United States v. Davenport, 753 F.2d 1460, 1462 (9th Cir.1985).
 
 
 43
 Here, the government disclosed the fingerprint evidence during trial. The court then invited defense counsel to contact the technician who conducted the initial tests and determine the need to produce her as a witness. Banda thus was afforded adequate opportunity to make effective use of the government's information regarding the fingerprint tests. There was no Brady violation. See United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir.1988).
 
 
 44
 D. Denial of New Trial Motion--Narcotics Involving Minor
 
 
 45
 We review the denial of a motion for a new trial for abuse of discretion. United States v. George, 960 F.2d 97, 101 (9th Cir.1992).
 
 
 46
 Banda argues the trial court erred in failing to grant his motion for a new trial because the jury heard allegations that he conspired with a minor to possess cocaine with the intent to distribute and that he used or employed the minor in a narcotics transaction. Although the government charged Banda with such crimes, the district court dismissed these counts for lack of evidence at the close of the government's case-in-chief. Banda contends the allegations were prejudicial and resulted in the denial of a fair trial. We disagree.
 
 
 47
 In ruling on Banda's motion for a new trial, the court found that although jurors might have "strong negative feelings toward illegal narcotics and those who distribute them," and such feelings could become exacerbated upon learning a distributor of controlled substances utilized a minor in connection with the distributions,
 
 
 48
 it does not necessarily follow that a defendant who is tried by jurors with such feelings necessarily suffers prejudice. To ensure that defendants in drug cases receive fair trials free from juror prejudice resulting from personal feelings about narcotics, the court, while conducting voir dire, makes certain that each juror is able to set aside any personal feelings he or she may have about narcotics and decide the case on the evidence presented.
 
 
 49
 The district court's analysis is sound. The voir dire process was sufficient to dispel the concerns Banda asserts, see Patton v. Yount, 467 U.S. 1025, 1038 n. 13 (1984); United States v. Steel, 759 F.2d 706, 711 (9th Cir.1985), and Banda does not challenge that process. The district court did not abuse its discretion in denying Banda's motion for a new trial.
 
 E. Sufficiency of the Evidence
 
 50
 Evidence at trial is sufficient to support a conviction if, viewing the evidence in the light most favorable to the prosecution, " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Mason, 902 F.2d 1434, 1441 (9th Cir.1990) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 51
 1. Possession of a Firearm in Relation to a Drug Crime
 
 
 52
 Banda contends the government presented insufficient evidence to conclude the loaded handgun found in his residence was used or carried during a drug trafficking offense, and his sentence enhancement under 18 U.S.C. Sec. 924(c)(1) therefore must be reversed.
 
 
 53
 To convict a defendant under 18 U.S.C. Sec. 924(c)(1), the government must prove a firearm played some role in the underlying crime, and that the defendant used or carried the firearm. United States v. Torres-Medina, 935 F.2d 1047, 1048-49 (9th Cir.1991). "When a firearm serves to protect the defendants or their drugs or to intimidate others, the firearm is said to have a role in the crime." United States v. Torres-Rodriguez, 930 F.2d 1375, 1385 (9th Cir.1991).
 
 
 54
 In Torres-Rodriguez, government agents found a loaded pistol in the defendant's bedroom, between the mattress and spring of the bed, and heroin, drug paraphernalia, and cash in other rooms of the house. Id. We concluded the jury could infer from this evidence the defendant possessed the handgun to protect the contraband located on the premises. Id. See also United States v. Stewart, 779 F.2d 538, 539-40 (9th Cir.1985) (Kennedy, J.) (jury reasonably could find gun discovered in trunk of car parked in front of house containing drugs protected drug operations).
 
 
 55
 In the present case, the officers searching the premises at 550 Chappel Road discovered over $14,000 in cash, over 13 kilograms of cocaine, one kilogram of marijuana, and other evidence of drug trafficking. The gun was loaded and was found under a seat cushion of a loveseat in Banda's living room. This evidence was sufficient for the jury to find the gun "was strategically located so as to be quickly and easily available" during a drug transaction. United States v. Guy, 903 F.2d 1240, 1243 (9th Cir.1990) (internal quotations omitted). See United States v. Martinez, 967 F.2d 1343, 1346 (9th Cir.1992); Torres-Medina, 935 F.2d at 1050. The evidence was sufficient to support Banda's conviction and sentence enhancement under 18 U.S.C. Sec. 924(c)(1).
 
 
 56
 2. Possession of Marijuana with Intent to Distribute
 
 
 57
 Banda contends the 2.2 pounds of marijuana discovered on his property is not inconsistent with personal use, and the evidence is insufficient to establish an intent to distribute. We disagree.
 
 
 58
 A jury reasonably could conclude 2.2 pounds of marijuana is more than a person would possess for personal use. United States v. Glenn, 667 F.2d 1269, 1272 (9th Cir.1982) (185 grams of marijuana considerably more than associated with personal use). See also Martinez, 967 F.2d at 1345-46. Furthermore, the government presented evidence that it found a triple beam scale, a telephone pager, a loaded weapon and $14,780 in cash at the Chappel Road premises. The 2.2 pounds of marijuana, in conjunction with the other evidence of drug trafficking, are sufficient to demonstrate Banda intended to distribute the marijuana. See United States v. Innie, 7 F.3d 840, 844 (9th Cir.), cert. denied, 114 S.Ct. 1567 (1994); Martinez, 967 F.2d at 1345-46.
 
 
 59
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Circuit Rule 36-3