UNITED STATES of America,

v.

Yb–Lem OSKOWITZ, Defendant.

No. 02–CR–1300–NGG.

United States District Court,
E.D. New York.

Dec. 10, 2003.

Tracy L. Dayton, United States Attorney, Eastern District of New York, Brooklyn, NY, for Plaintiff.

Richard D. Willstatter, Green & Willstatter, White Plains, NY, for Defendant.

## OPINION & ORDER

GARAUFIS, District Judge.

Defendant Oskowitz has filed a motion *in limine* to exclude various pieces of evidence from her upcoming trial. She is charged with twenty-six counts of knowingly and willfully aiding and assisting in procuring, counseling, and advising the preparation and presentation of false tax returns, in violation of 26 U.S.C. § 7206(2) and 18 U.S.C. § 2. More specifically, the government alleges that upon receipt of advertisements by Oskowitz promising tax refunds, people who had never filed income tax returns before went to Oskowitz's office in Richmond Hill, Queens. Government's Memorandum of Law ("Gov. Mem.") at 4. They told her their names and social security numbers, and Oskowitz allegedly would decide upon an income figure for the taxpayer that would qualify for the Earned Income Credit ("EIC"). *Id.* The government claims that according to some of the taxpayers, Oskowitz told them that they could say they were working as a babysitter when they were in fact caring for their own children. *Id.* Oskowitz allegedly took her payment for providing this service out of the improperly obtained tax refund. *Id.*

Some of the issues raised in Oskowitz's motion papers were disposed of at oral argument by agreement of the parties, and I will reserve judgment on others, namely defendant's discovery requests, for a later date. In this opinion I will address three issues raised by Oskowitz: (1) her request to exclude testimony relating to three visits made to her office by undercover IRS agents; (2) her motion to exclude or limit testimony proffered by the government's

expert handwriting witness; and (3) her demand for a bill of particulars. I will address each request in turn.

## I. Motion to Exclude Testimony Relating to the Undercover Visits

On three separate occasions, twice in late March and once on April 15, 1999, IRS agents conducted undercover operations as part of an investigation into Oskowitz's activities. Gov. Mem. at 4–5. The agents posed as clients who wished to have Oskowitz prepare their tax returns, and they tape recorded Oskowitz's comments. *Id.* at 5. The government alleges that during these meetings Oskowitz acted in conformity with the accounts of the taxpayers they interviewed, for whom Oskowitz had prepared returns. One example provided by the government is that of Oskowitz allegedly providing an agent with a tax return listing her as having earned $6,150 as a babysitter, despite the fact that the agent had not provided any such information to Oskowitz. *Id.* Other agents will claim that Oskowitz told an agent she could claim to be employed by virtue of the fact that she cared for her own daughter. Defendant's Memorandum of Law ("Def. Mem.") at 2. Another agent will claim that she overheard Oskowitz tell another client that a woman who was on welfare and caring for a minor child could obtain a tax refund. *Id.*

Oskowitz's interactions with the undercover agents are not part of the activity for which she was indicted—the dates of the relevant tax returns are between November 15, 1998 and April 15, 1999, and none of them are for the dates when the undercover agents visited Oskowitz's office. Therefore, she argues, evidence concerning the agents' visits should be excluded from evidence. Evidence of other crimes or acts is not admissible to prove that a defendant acted in this instance in

conformity with her earlier behavior. *See* Federal Rule of Evidence 404(b).

■ In response, the government first asserts that the disputed evidence demonstrates Oskowitz's "method of operation." If so it would be probative of the crimes actually charged, and Rule 404(b) would not apply. I find that Oskowitz's alleged statements about how to fill out tax forms are not unique or distinctive enough to constitute a "method of operation" such that the evidence would be probative of the crimes actually charged. *See McCormick on Evidence,* § 190 (15th Ed.) ("The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature"). Therefore this evidence is, at the very least, subject to Rule 404(b).

■ Oskowitz correctly points out that "[I]n order for the Court to properly admit prior act evidence pursuant to Rule 404(b), the Court must determine whether: (1) the prior act evidence is offered for a proper purpose; (2) the evidence is relevant to a disputed issue; and (3) the probative value of the prior act evidence is substantially outweighed by the danger of unfair prejudice." *Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). The government argues that the first prong of this test is met because it intends to offer this evidence for the proper purposes of proving intent, knowledge, corroboration, and absence of mistake or accident. The Second Circuit has adopted an "inclusionary" view of Rule 404(b), *United States v. Levy,* 731 F.2d 997, 1002 (2d Cir.1984), meaning that other crimes or bad acts evidence is admissible "for any purpose except to show criminal propensity . . ." *United States v. Germosen,* 139 F.3d 120, 127 (2d Cir.1998) (citations omitted). Therefore, the list of reasons found in Rule 404(b) itself (which list does include intent, knowledge, and absence of mistake or accident) is not exhaustive, so corroboration is also an acceptable purpose to admit prior act evidence.

■ As to the second prong of the *Huddleston* test requiring relevance to a disputed issue, the government argues that Oskowitz will defend herself in this case by claiming that she did not intentionally or knowingly put false information on the relevant tax returns; rather, she relied only on information provided by the taxpayers themselves. Gov. Mem. at 7. Any incorrect information therefore would be due either to purposefully false statements by the taxpayer or a miscommunication between the taxpayer and Oskowitz. Such a defense clearly makes relevant the evidence in question, in order to prove knowledge, intent, or absence of mistake or accident. *See, e.g. United States v. Ramirez,* 894 F.2d 565, 568 (2d Cir.1990) ("When the defendant disavows awareness that a crime was being perpetrated . . . . knowledge is properly put in issue"). *Cf. United States v. Newton,* 2002 WL 230964 at *4 (S.D.N.Y. February 14, 2002) ("Moreover, the evidence that Newton effortlessly obtained visas under similar false pretenses does tend to show a plan or method for procuring visas on Newton's part, even though the crimes themselves may not have been connected"). As part of her defense Oskowitz might also attack the credibility of the taxpayers whose returns she prepared and who testify against her (or whose admissible out-of-court statements are admitted against her). Thus, the evidence in question may also properly be used to corroborate the government's witnesses' accounts of their interaction with Oskowitz. *See United States v. Everett,* 825 F.2d 658, 660 (2d Cir.1987) ("Under Rule 404(b) evidence of 'other crimes' has been consistently held admissible to corroborate crucial prosecution testimony").

Finally, the government argues that the probative value of this evidence is not "substantially outweighed by the danger of unfair prejudice." Federal Rule of Evidence 403. *See also Germosen,* 139 F.3d at 127. I find that the evidence in question is in no way inflammatory, nor would it paint Oskowitz in a light at all different from the way she will be painted by the evidence concerning her charged acts. Therefore, I do not believe that there will be much prejudice to the defendant from the introduction of this evidence, let alone prejudice that would substantially outweigh its probative value. However, to reduce any possible prejudice I will issue a limiting instruction to the jury, requiring it to consider the disputed evidence only for the proper purposes described above. I will instruct the jurors that they may not infer from this evidence that Oskowitz has the propensity to commit any crimes.

II. Motion to Exclude or Limit Testimony of the Government's Handwriting Expert

Oskowitz has moved to exclude, or in the alternative to limit, the testimony of the government's handwriting expert, John Paul Osborn. She argues that the field of handwriting analysis does not pass the tests the Supreme Court laid out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), for scientific or other technical experts. I am persuaded by the cases Oskowitz cites, such as *United States v. Hines,* 55 F.Supp.2d 62 (D.Mass.1999) that Osborn's testimony should be limited, as explained below.

The Supreme Court's *Daubert* decision, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (and its 1999 *Kumho* decision, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238, extending the reasoning of *Daubert* to non-scientific expert fields, including fields of expertise based upon observation rather than scientific principles) guides my decision on this issue. Under these cases it is the trial court's job to serve as a gatekeeper, preventing the jury from hearing expert opinion testimony that the court believes will not "assist the trier of fact to understand the evidence." Federal Rule of Evidence 702. While under the *Daubert/Kumho* standard courts may permit expert testimony in fields of debatable expertise that have not been peer-reviewed, they still may consider all or some of these factors: (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; and, (4) whether there is "general acceptance" within the relevant scientific (or technical) community, to the extent that one exists. *See Daubert,* 509 U.S. at 593–95, 113 S.Ct. 2786.

The government has not submitted any material in support of its contention that this evidence should be admitted, aside from citing to other cases and asserting that this testimony meets the requirements of Rule 702. It has not asserted that Mr. Osborn's techniques can be or have been tested, or whether his techniques, let alone the whole field of handwriting identification, have been subjected to peer review and publication. The government has neither submitted an error rate for this type of analysis, nor has it argued that there is "general acceptance" of Mr. Osborn's techniques, or even if such a community exists. The government cites three cases from the Second Circuit, but all are were decided before *Kumho* extended any kind of *Daubert* analysis to "non-scientific" fields, such as handwriting analysis. In the only one of these three cases decided after the mid 1970's, *United*

*States v. Rivera*, 22 F.3d 430, 436 (2d Cir.1994), it appears that the defendant did not contest the propriety of admitting expert testimony on handwriting.

In fact, many of the courts that have analyzed handwriting expert testimony after *Daubert/Kumho* have found it lacking. "Handwriting analysis has never been subject to meaningful reliability or validity testing, comparing the results of the handwriting examiners' conclusions with actual outcomes." *Hines*, 55 F.Supp.2d at 68. "There is no peer review by a 'competitive, unbiased community of practitioners and academics.'" *Id.*, citing *United States v. Starzecpyzel*, 880 F.Supp. 1027, 1038 (S.D.N.Y.1995). To the extent that handwriting analysis techniques have been "generally accepted" by a relevant technical community, that community has not been a "financially disinterested independent community, like an academic community." *Id.* The results of expert handwriting analysis have never been proven more reliable on the issue than the opinions of lay people. *Id.* Handwriting experts themselves conclude that "unlike DNA or even fingerprints, one's handwriting is not at all unique in the sense that it remains the same over time, or uniquely separates one individual from another. Everyone's handwriting changes from minute to minute, day to day." *Id.* at 69.

Notwithstanding these problems, Judge Gertner concluded in *Hines* that because of a handwriting expert's experience observing many samples of handwriting over the course of a career, such an expert could appropriately explain to the jury how two samples of handwriting are similar to each other. *See id.* This type of testimony may be aggressively cross-examined about why some differences between the two samples are significant while other differences are not, and the jury can reach its own conclusion about who wrote the disputed document—the jury is quite capable of understanding these arguments, unlike biochemistry, perhaps, or string theory. The expert may not, however, give the opinion that a handwriting sample was written by a particular person, because the handwriting analysis field does not pass *Daubert/Kumho* muster sufficiently to permit such an authoritative and potentially prejudicial statement.

Many other district courts have similarly permitted a handwriting expert to analyze a writing sample for the jury without permitting the expert to offer an opinion on the ultimate question of authorship. *See United States v. Rutherford*, 104 F.Supp.2d 1190 (D.Neb.2000); *United States v. McVeigh*, 1997 WL 47724 (D.Colo.Trans.Feb.5, 1997); *United States v. Santillan*, 1999 WL 1201765 (N.D.Cal. Dec.3, 1999); *United States v. Van Wyk*, 83 F.Supp.2d 515 (D.N.J.2000); *United States v. Hidalgo*, 229 F.Supp.2d 961 (D.Ariz.2002). *Cf. United States v. Fujii*, 152 F.Supp.2d 939 (N.D.Ill.2000); *United States v. Saelee*, 162 F. Supp.2d 1097 (D.Alaska 2001) (excluding all testimony by a handwriting expert); *United States v. Brewer*, 2002 WL 596365 (N.D.Ill.2002) (also excluding all handwriting expert testimony). I find that the proper scope of Mr. Osborn's testimony (as well as the testimony of any opposing handwriting expert the defense may choose to produce) extends to explaining to the jury the similarities and differences between a known example of Oskowitz's handwriting and a disputed tax return. Jurors may then make a decision on the ultimate question of authorship with the benefit of that expert testimony, as well as the benefit of their cumulative experience distinguishing the penmanship of different writers.

## III.   Motion for a Bill of Particulars

In her reply memorandum, Oskowitz moved for the first time for a bill of

particulars, a motion opposed by the government at oral argument on the motions. Specifically, Oskowitz seeks to know: (1) the particular "material matters" alleged to have been false and fraudulent such that the taxpayers were not entitled to claim earned income tax credits; (2) what entries are allegedly false in each return charged in each count; and (3) which taxpayers allegedly were told that they could claim they were employed if they cared only for their children. Defendant's Reply Memorandum (Reply Mem.) at 3. The government has opposed Oskowitz's request.

"Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double-jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987). In the Second Circuit "A bill of particulars is required 'only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Walsh,* 194 F.3d 37, 47 (2d Cir.1999), citing *United States v. Torres,* 901 F.2d 205, 234 (2d Cir.1990).

The indictment returned against Oskowitz on November 6, 2002 lists specific dates for each tax return charged, taxpayer names for each return, the alleged falsely claimed occupation on each return, reported earned income for each return, and the amount of tax credit issued for each of the tax returns. The indictment charges that the returns allegedly were "false and fraudulent as to material matters in that they represented that said taxpayers were entitled under the provisions of the Internal Revenue laws to earned income tax credits based upon reported earned income in amounts specified below, whereas,

as the defendant then and there well knew and believed, said taxpayers were not entitled to claim earned income tax credits in said amounts."

A decision to grant a bill of particulars lies within the sound discretion of the trial court. *See United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir.1984). I find that the information contained in the indictment is sufficient to meet the Second Circuit standards recited above; thus, no bill of particulars is warranted. The "material matters" Oskowitz wishes to learn more about are clearly implied by the indictment itself—the occupation of the taxpayer and possibly the amount of reported income. These two pieces of information must also be the allegedly false entries in the charged returns. Finally, it is clear that the taxpayers purportedly told they could claim they were working when they in fact only cared for their children are those who listed "babysitting" or "child care" as part of their occupation. I also note that Oskowitz will have access to all of the charged returns before her trial, if she does not have them already. The Second Circuit's standard for requiring a bill of particulars, as articulated in *Walsh* and *Torres,* is unmet, and I conclude that this indictment adequately notifies Oskowitz of the specific acts for which she is being charged. She will be able to mount a proper defense to the charges, and no bill of particulars is necessary.

To summarize, the evidence concerning the undercover agents' interactions with Oskowitz are admissible under Rule 404(b), subject to a limiting instruction; any handwriting experts may testify by demonstrating for the jury the differences and similarities among different handwriting samples, but such experts may not give an opinion as to the identity of the writer;

and Oskowitz's motion for a bill of particulars is denied.

SO ORDERED.